1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

CHRISTINA LYNNE WOODS,

9

Plaintiff,

10

v.

11

MICHAEL J. ASTRUE, Commissioner of
Social Security,

12

13

Defendant.

Case No. C11-2134-RAJ-BAT

**REPORT AND
RECOMMENDATION**

14    Christina Lynne Woods seeks review of the denial of her application for Disability

15   Insurance Benefits ("DIB").  She contends the ALJ erred by:  (1) failing to identify all of her

16   severe impairments at step two; (2) failing to address the opinions of S. Gregory Hipskind, M.D.,

17   Ph.D., Vanessa Hoff, Ph.D., and Frederick Silver, Ph.D.; (3) improperly determining  her alcohol

18   use was a material factor contributing to her disability; (4) improperly posing hypothetical

19   questions to the vocational expert; and (5) improperly discrediting her testimony.  Dkt. 11.  For

20   the reasons set forth below, the Court recommends the case be **AFFIRMED**.

21                    I.        **FACTUAL AND PROCEDURAL HISTORY**

22    Ms. Woods was born in 1959 and was 44 years old on the amended alleged onset date.

23   Tr. 21.  She has a high school education, and previously worked as a bank teller, floral designer,

and baking assistant.  Tr. 46, 137.  On August 9, 2007, she applied for DIB, alleging disability

beginning December 9, 2003.  Tr. 21.  She subsequently amended the alleged onset date to

March 1, 2004.  Tr. 536, 565.

Ms. Woods's application was denied initially and on reconsideration.  Tr. 89, 92, 97.  She

requested a hearing which took place on March 25, 2009.  Tr. 40-84.  On May 13, 2009, the ALJ

issued a decision, finding Ms. Woods not disabled.  Tr. 11-20.  The Appeals Council denied

review, Tr. 1-3, and she filed a complaint in the United States District Court for the Western

District of Washington.  On September 29, 2010, the Court issued an Order remanding for

further administrative proceedings pursuant to the parties' stipulated motion.  Tr. 620.

The ALJ held a second hearing on June 23, 2011.  Tr. 555-602.  On September 1, 2011,

the ALJ issued an amended decision, finding Ms. Woods not disabled.  Tr. 520-32.  On

December 20, 2011, Ms. Woods filed the present action challenging the Commissioner's

decision.  Dkt. 1.

## II.    THE ALJ'S DECISION

Utilizing the five-step disability evaluation process, [1] the ALJ made the following

findings:

> **Step one:**  Ms. Woods had not engaged in substantial gainful activity since March 1,
> 2004, the amended alleged onset date.  Tr. 523.

> **Step two:**  Ms. Woods had the following severe impairments:  disorders of the muscle,
> ligament, and fascia; fibromyalgia; obesity; depressive disorder, not otherwise specified;
> and continuous alcohol dependency.  *Id*.

> **Step three:**  These impairments, including the substance use disorder, met or equaled the
> requirements of Listings 12.04, 12.07, and 12.09. [2]  Tr. 524.  However, if Ms. Woods
> stopped the substance use, these impairments would not meet or equal the requirements
> of a listed impairment.  Tr. 526.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. App. 1.

REPORT AND RECOMMENDATION - 2

**Residual Functional Capacity:** If she stopped the substance use, Ms. Woods would have the residual functional capacity to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk two hours in an eight hour workday, and sit six hours in an eight hour workday. She could push or pull within the lifting requirements, frequently balance, and occasionally climb, stoop, kneel, crouch, and crawl. She could never climb ladders, ropes, or scaffolds, or work around concentrated exposure to fumes, odors, dust, gases, poor ventilation, and unprotected heights. She could understand and remember simple and detailed tasks, and interact appropriately with others. Tr. 527.

**Step four:** If Ms. Woods stopped the substance use, she could not perform her past relevant work. Tr. 531.

**Step five:** If Ms. Woods stopped the substance use, she would be capable of performing a other jobs existing in significant numbers in the national economy and, therefore, was not disabled. Tr. 531-32.

## III.   DISCUSSION

### A.   Identification of Severe Impairments at Step Two

Ms. Woods argues the ALJ failed to identify all of her severe impairments at step two. Dkt. 11 at 6. She contends the medical evidence shows her traumatic brain injury and attention deficit hyperactivity disorder ("ADHD") are medically determinable, severe impairments. *Id.*

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling ("SSR") 85-28). "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Id.* (citing *Bowen*, 482 U.S. at 153-54).

On April 17, 2006, S. Gregory Hipskind, M.D., Ph.D., performed a single photon

emission computerized tomography ("SPECT") scan of Ms. Woods's brain.  Tr. 757-61.  Dr.

Hipskind reported findings consistent with traumatic brain injury and probable

toxic/hypoxic/anoxic brain injury, "possibly consistent with [Ms. Woods's] clinical history of

alcohol consumption."  Tr. 761.  In addition, he noted "emerging indications" of anxiety-related

disorder, learning and/or neuro-developmental disorder, and ADHD.  Tr. 757.  His SPECT report

notes,

> Although there is a very large body of peer-reviewed scientific articles showing
> certain brain patterns associate with certain psychiatric conditions, the utilization
> of SPECT for the evaluation of psychiatric disorders is still considered an
> emerging science and therefore in the investigational stage.  Although we will
> report on brain patterns of certain psychiatric conditions such as [ADHD] . . .
> based on patterns published in peer-reviewed journals, such findings are not
> considered stand alone or diagnostic per se and should always be considered in
> conjunction with the patient's clinical conditions.  These data should only be used
> as additional information to add to the clinician's diagnostic impression.

Tr. 761.  Although Dr. Hipskind diagnosed a brain injury, he was not able to definitively

diagnose ADHD.  *See id.*  Dr. Hipskind did not assess any limitations as a result of his findings.

The ALJ cited Dr. Hipskind's SPECT studies in her decision, noting that a "SPECT scan

of the head, according to the interpreting physician, revealed multiple abnormalities that could

signify changes due to the claimant's chronic alcohol abuse."  Tr. 525.  The ALJ did not

specifically address Dr. Hipskind's diagnoses.

Ms. Woods contends that she met her burden of providing objective medical evidence

consisting of signs, symptoms, and laboratory findings of a probable brain injury and ADHD.

Dkt. 13 at 4.  She contends that the ALJ erred by disregarding objective evidence of a medically

determinable impairment.  As a diagnosis alone is not sufficient to establish a severe impairment

or any functional limitations caused by the impairment, the ALJ's failure to mention these

diagnoses, in and of itself, was not erroneous.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c) (at step

two, a claimant has the burden of making a threshold showing that a medically determinable impairment significantly limits his ability to perform basic work activities).  The mere fact that a medically determinable condition exists does not automatically mean the symptoms are "severe," or "disabling."  *See, e. g., Edlund v. Massanari*, 253 F.3d 1152, 1159–60 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597, 603 (9th cir.1989).  Rather, to establish severity, the evidence must show the diagnosed condition significantly limits a claimant's physical or mental ability to do basic work activities.  *See* 20 C.F.R. §§ 404. 920(c), 416.920(c).  Dr. Hipskind did not assess any functional limitations as a result of his findings.  Ms. Woods asserts that her "brain injury would preclude basic work activities, especially her inability to understand, carryout and remember simple instructions and complete tasks."  Dkt. 13 at 4.  However, as discussed below, the ALJ properly rejected Ms. Woods's testimony, so her own symptom testimony cannot bolster her argument.  Accordingly, the ALJ did not err in failing to discuss Dr. Hipskind's diagnoses.

Plaintiff also asserts that the ALJ erred by not finding ADHD severe based on the psychological interview conducted by Vanessa Hoff, Ph.D., on March 30, 2011.  Dkt. 11 at 7, Ex. B; Tr. 750-55.  As argued by the Commissioner, because Ms. Woods is seeking DIB under Title II, she must establish disability on or before March 31, 2008, her date last insured, to be entitled to DIB.  Dkt. 12 at 10; Tr. 523.  Because Dr. Hoff's assessment occurred three years after her date last insured, it was not relevant to her application for DIB.  The ALJ did not err in failing to address Dr. Hoff's assessment and ADHD diagnosis.[3]

---

[3] Ms. Woods argues in her reply brief that the ALJ also erred by failing to address the psychiatric evaluation performed by N.D. Raghunath, M.D., on October 11, 2010. Dkt. 13 at 7.  Like Dr. Hoff's assessment, Dr. Raghumath's evaluation occurred after Ms. Woods's date last insured and is not relevant to her application for DIB.  Tr. 747-49.  Moreover, issues raised for the first time in a reply brief are waived and will not be considered by the Court. *United States ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1199 n. 1 (9th Cir. 2009).  The Commissioner has had no opportunity to respond to these new arguments, and the Court will not consider them.

1    Even assuming the ALJ erred in neglecting to list traumatic brain injury or ADHD at step

2    two, Ms. Woods does not succeed in showing such error was harmful.  An error at step two may

3    be harmless if the omission of a medically determinable severe impairment did not prejudice the

4    claimant at any later steps.  *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)

5    ("Assuming without deciding that this omission constituted legal error, it could only have

6    prejudiced Burch in step three (listing impairment determination) or step five (RFC) because the

7    other steps, including this one, were resolved in her favor.").  As indicated below, the ALJ

8    adequately accounted for all of Ms. Woods's impairments at step three and in her construction of

9    the RFC and the hypothetical she presented to the vocational expert.  Thus, any error in failing to

10   include the brain injury and ADHD at step two is harmless error.

11   **B.    Step Three Findings**

12   At step three, the ALJ must determine whether a claimant's severe impairment meets or

13   equals an Appendix 1 Medical Listing and is "presumptively" disabling.  20 CFR §§

14   404.1520(d), 416.920(d).  Ms. Woods argues the ALJ erred at step three by failing to consider

15   whether her traumatic brain injury met Listing 12.02.  Dkt. 11 at 8.  She contends Dr. Hipskind's

16   findings clearly implicate an organic brain disorder.  *Id.*  However, "[t]he mere diagnosis of an

17   impairment listed in Appendix 1 is not sufficient to sustain a finding of disability. . . . [An

18   impairment] must also have the *findings* shown in the Listing of that impairment."  *Key v.*

19   *Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).  Ms. Woods neither identifies limitations

20   supported by the record that were not considered by the ALJ, nor does she present any theory as

21   to how her brain injury meets or equals Listing 12.02.  Thus, Ms. Woods has not met her burden

22   at step three.

23   Furthermore, the ALJ considered whether Ms. Woods's impairments met or equaled

Listings 12.04, 12.07, and 12.09.  Tr. 524, 526.  Part of the analysis for determining whether an impairment meets or equals Listing 12.04, 12.07, 12.09, or *12.02* is the same.  *See* 20 C.F.R. Part 404, Subpart P. App. 1.  To satisfy the "B" criteria, the impairment must result in at least two of the following:  marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation.  The ALJ specifically addressed each functional area, finding Ms. Woods's impairments, when including her substance use disorder, caused moderate restriction in activities of daily living, marked difficulties in social functioning, marked difficulties in concentration, persistence, or pace, and no episodes of decompensation, and were presumptively disabling.  Tr. 524.  However, the ALJ found, if Ms. Woods stopped her substance use, her impairments would cause only moderate restriction in activities of daily living, moderate to marked difficulties in social functioning, mild to moderate difficulties in concentration, persistence, or pace, and no episodes of decompensation.  Tr. 526.  The ALJ also considered the "C" criteria and determined Ms. Woods's mental impairment did not satisfy the "C" criteria.  Tr. 527.  The ALJ thus concluded, if Ms. Woods stopped her substance use, her impairments would not meet or equal a listed impairment.  Tr. 526-27.  Ms. Woods has cited no authority indicating the ALJ was required to do more.  In light of the ALJ's explanation as to why Ms. Woods did not meet the paragraph B or C criteria, and because Ms. Woods offers no plausible theory showing her impairments meet or equal Listing 12.02, her argument that the ALJ erred at step three fails.[4]

---

[4] Ms. Woods also argues for the first time in her reply that the ALJ erred by failing to consider whether her brain disorder met Listings 11.02 (convulsive epilepsy), 11.03 (nonconvulsive epilepsy), and 11.04 (central nervous system vascular accident).  Dkt. 13 at 6.  Ms. Woods has waived these arguments by failing to raise them in her opening brief.  *See, e.g., Horizon Health Corp*. 565 F.3d at 1199 n. 1.

REPORT AND RECOMMENDATION - 7

## C.     Evaluation of the Medical Evidence

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). Rather than merely stating his conclusions, the ALJ "must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*.

Ms. Woods argues the ALJ failed to properly consider the opinions of Dr. Hipskind and Dr. Hoff. Dkt. 11 at 8. However, she fails to explain how these alleged errors prejudiced her. As indicated above, Dr. Hipskind did not assess any limitations as a result of his findings. See Tr. 757-61. Further, as noted above, Dr. Hoff's evaluation, conducted three years after Ms. Woods's date last insured, is not relevant to her application for DIB.

Ms. Woods also argues the ALJ improperly disregarded the opinion of Fred Silver, Ph.D., who evaluated Ms. Woods in June 2005 for a pain management program. Tr. 221-25. However, the ALJ discussed Dr. Silver's opinion, noting that Ms. Woods's treating psychologist confirmed her affect was moderately depressed, and noted she reported drinking wine each night. Tr. 523.

1    Additionally, the ALJ noted Dr. Silver commented that Ms. Woods "endorsed an 'unusually

2    broad patter of pain symptoms,' including nonspecific somatic complaints, with at least a mild

3    disability conviction.  Treatment has also been limited; as of 2005 she reported receiving

4    psychiatric care for one month, twenty years ago, suggesting the claimant's symptoms may not

5    be to the degree alleged."  Tr. 528.  The ALJ need only explain why significant probative

6    evidence has been rejected.  See *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th

7    Cir.1984).  It is clear from the record that the ALJ considered Dr. Silver's evaluation, however,

8    Dr. Silver did not assess any functional limitations.  The ALJ was not required to discuss Dr.

9    Silver's report in the absence of significant probative evidence of work related functional

10   limitations or restrictions.  Accordingly, the ALJ did not err in assessing Dr. Silver's evaluation.

11   **D.      Drug Abuse and Alcoholism Analysis**

12            A social security claimant is not entitled to benefits "if alcoholism or drug addiction

13   would . . . be a contributing factor material to the Commissioner's determination that the

14   individual is disabled."  42 U.S.C. § 423(d)(2)(C).  Therefore, where relevant, an ALJ must

15   conduct a drug abuse and alcoholism ("DAA") analysis and determine whether a claimant's

16   disabling limitations remain, absent the use of drugs or alcohol.  20 C.F.R. §§ 404.1535,

17   416.935.  That is, the ALJ must first identify disability under the five-step procedure and then

18   conduct a DAA analysis to determine whether substance abuse is material to disability.

19   *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).  If the remaining limitations

20   without DAA would still be disabling, then the claimant's drug addiction or alcoholism is not a

21   contributing factor material to his disability.  If the remaining limitations would not be disabling

22   without DAA, then the claimant's substance abuse is material and benefits must be denied.

23   *Parra v. Astrue*, 481 F.3d 742, 747-48 (9th Cir. 2007).  Plaintiff bears the burden of proving that

REPORT AND RECOMMENDATION - 9

1   DAA is not material to the disability claim.  *Id*. at 748.

2       Ms. Woods argues that the ALJ erred in finding DAA was material to the finding of

3   disability.  Dkt. 11 at 9.  However, she bases this argument solely on the arguments the Court has

4   rejected above.  Because the ALJ did not err in failing to find her traumatic brain injury and

5   ADHD severe at step two, the ALJ's finding that Ms. Woods's substance use is a contributing

6   factor material to the determination of disability is not in error.

7   **E.       Residual Functional Capacity Assessment and Step Five Determination**

8       Ms. Woods argues that the ALJ erred at step five because the RFC and the hypothetical

9   to the vocational expert ("VE") did not reflect all of her limitations.  Dkt. 11 at 10.  Ms. Woods

10  asserts that, even without alcoholism, she would continue to have moderate limitations in

11  concentration, persistence, and pace, and that the ALJ erred in failing to include any mental

12  limitations in the RFC and hypothetical posed to the VE.

13      A hypothetical posed to a VE must include all of the claimant's functional limitations

14  supported by the record.  *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (citing *Flores v.*

15  *Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995)).  A VE's testimony based on an incomplete

16  hypothetical lacks evidentiary value to support a finding that a claimant can perform jobs in the

17  national economy.  *Lewis v. Apfel*, 236 F.3d 503, 517-18 (9th Cir. 2001) ("Hypothetical

18  questions asked of the vocational expert must 'set out all of the claimant's impairments.'  If the

19  record does not support the assumptions in the hypothetical, the vocational expert's opinion has

20  no evidentiary value.") (quoting *Gamer v. Sec'y of Health and Human Servs*., 815 F.2d 1275,

21  1278-79 (9th Cir. 1987)).  However, the ALJ is not required to include limitations for which

22  there is no evidence.  *See also Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1197 (9th

23  Cir. 2004) (holding the ALJ need not include in the RFC assessment properly discounted opinion

REPORT AND RECOMMENDATION - 10

evidence or claimant testimony).  The ALJ may rely on VE testimony if the hypothetical presented to the expert includes all functional limitations supported by the record and found credible by the ALJ.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Here, the ALJ found, if Ms. Woods stopped her substance use, she would continue to have a severe mental impairment. Tr. 526.  In assessing the limitations this mental impairment caused, the ALJ relied on the opinions of examining psychiatrist Rufino Ramos, M.D., and state agency medical consultant R. Eisenhauer, Ph.D. Tr. 530, 235-37, 259-62.  The ALJ noted,

> Dr. Ramos observed that the claimant's stream of mental activity was within limits, her speech pattern was normal and her thought content did not reveal any abnormalities.  A mental status examination showed the claimant was oriented, her memory for recalling past events was good, she could recall three objects after five minutes, she repeated five digits forward/backward "quite well," and she could recite important names.  In calculation testing, she performed serial threes "quite well" and spelled "world" forward [and] backward without errors.  During testing, the claimant was capable of following a three-step command and she could track conversation.

Tr. 530 (citing Tr. 236).  Dr. Ramos opined that Ms. Woods was capable of performing simple and multitask activities, and that her difficulty with concentration and memory was likely related to her pain medication and alcohol abuse. Tr. 237.  The medical expert, C. Richard Johnson, M.D., concurred with Dr. Ramos's opinion. Tr. 593.

Likewise, Dr. Eisenhauer noted moderate limitations in sustained concentration and persistence and adaptation, but found these limitations were attributable to her alcohol use. Tr. 259-61.  With regards to sustained concentration and persistence, Dr. Eisenhauer noted,

> Despite her depression and drinking she presented as fully oriented with good recall of past events and intact recent memory.  She was aware of current political figures, had a good fund of information and showed no concentration deficits. The claimant was able to accurately complete a three step command and showed no difficulty following conversation and instructions.  In all, even though drinking and having subjective concerns of decreased cognitive functioning, upon demand during examination, these deficits were not apparent.

REPORT AND RECOMMENDATION - 11

Tr. 261.  Dr. Eisenhauer opined that Ms. Woods is able to understand, recall and execute both simple and detailed instructions.  *Id*.  Dr. Eisenhauer acknowledged that her sustained concentration, pace, and persistence would be compromised during heavy drinking, but that her intact activities of daily living and cognitive functioning showed she is able to perform tasks within a schedule the majority of the time.  *Id*.  Dr. Eisenhauer also opined that, due to her drinking, Ms. Woods would have moderate limitations in her ability to respond to changes on the job and be aware of normal hazards and take precautions.  *Id*.

Based on these assessments, the ALJ appropriately found Ms. Woods's moderate mental limitations were attributable to her alcohol use.  The ALJ thus properly concluded, if Ms. Woods stopped her alcohol use, she would have the mental RFC to understand and remember simple and detailed tasks, and interact appropriately with others.  Tr. 527.  Ms. Woods offers no cogent explanation how these medical opinions were improperly evaluated.  The corresponding hypothetical to the VE included all of the limitations that were supported by substantial evidence.  The failure to include additional mental limitations suggested by Ms. Woods does not render the hypothetical to the VE incomplete or improper.  Furthermore, the ALJ's hypothetical assumptions need not be the only rational interpretation of the record.  When the evidence supports more than one rational interpretation, the Court must defer to the ALJ's findings.  *See Batson*, 359 F.3d at 1193.  Because the ALJ's RFC determination is a rational interpretation of the record and supported by substantial evidence, her step five determination is affirmed.

**F.       Evaluation of Ms. Woods's Testimony**

Ms. Woods argues that the ALJ erred by finding her testimony not credible.  Dkt. 11 at 11.  The ALJ did not find that Ms. Woods was malingering.  Thus, the ALJ was required to provide clear and convincing reasons to reject her testimony.  *See Vertigan v. Halter*, 260 F.3d

REPORT AND RECOMMENDATION - 12

1044, 1049 (9th Cir. 2001).  An ALJ does this by making specific findings supported by substantial evidence.  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.

In this case, the ALJ found, if  Ms. Woods stopped her substance use, her impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible.  Tr. 528.  Ms. Woods argues that because of the errors she asserts above, the ALJ erred in finding her testimony not credible.  Dkt. 11 at 11.  However, as the Court has concluded that the ALJ did not err in assessing the medical evidence, or posing a hypothetical to the VE, this argument fails.

## IV.    CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **AFFIRMED**.  A proposed order accompanies this Report and Recommendation.  Objections, if any, to this Report and Recommendation must be filed and served no later than **October 10, 2012.**  If no objections are filed, the matter will be ready for the Court's consideration on **October 12, 2012**.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed twelve pages.  The failure to timely object may affect the right to appeal.

DATED this 26th day of September, 2012.


_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13